Afternoon is case number 4-15-0637, People v. Noble Lewis Jr. For the appellant is attorney St. Germain and for the appellee is attorney McClain. Good afternoon. Mr. St. Germain, are you ready to proceed? Yes, sir. You may. Good afternoon. Your honors, counsel, and may it please the court. My name is Santos St. Germain and I am here on behalf of Noble Lewis Jr. Mr. Lewis raised five issues in appeal. The state conceded issue number 5 and we withdrew issue number 4. Therefore, I will be addressing issue number 2 and briefly touch on issue number 3. By the way, counsel, before I proceed, I want to commend you for doing that. I think as with the state and with you, if a matter has come to your attention that says, well, I should concede this point, I think that's a professional thing to do and it's a service to this court as well. So I thank you. Thank you, your honor. With that being said, Mr. Lewis admits that the evidence in this case was insufficient to prove him guilty beyond a reasonable doubt. In the event that this court were to find the evidence was sufficient, reversal is required because error occurred and the evidence was at least closely balanced in this case. As this court will know, a defendant's Sixth Amendment rights includes the requirement that the jury deliberation remains private and secret. The purpose of this rule is to allow the jury to analyze the evidence and assess the defendant's guilt free from any influence or any chilling effect that may occur from the presence of the trial court, the parties, or any persons present in the courtroom. Thus, deliberation includes the examination of any published exhibits. The moment the jury has been instructed, the case is submitted to the jury and the jury has not yet announced that it has reached a verdict. In this case, the jury twice announced that it could not reach a verdict as to the relevant charge at issue here. In fact, the jury requested an audio recording which was pertinent to the issue presented. The jury's request was made while the jury was still in deliberation and although the court complied with that request, the court required the jury to examine the audio recording in the presence of the parties in the courtroom with the trial judge being present. Error therefore occurred because the trial court breached the bail of secrecy which is traditionally and constitutionally applied to jury deliberation. Thus, Mr. Lewis' Sixth Amendment right was violated. Well, I don't understand why it is that the jury's hearing this in the presence of the people in the courtroom when they heard it, hearing it for a second time, interferes with their deliberations. It does interfere with the deliberation, Your Honor, because deliberation was not suspended. Deliberation included... What do you mean deliberations was not suspended? Well, suspension of deliberation occurs if the jury reached a verdict or the jury is allowed to stop jury deliberation to either retire for the night or come back later to re-deliberate or if there is a legal issue which requires the court to provide the jury with some information. None of those situations occurred in this case. Will the jury? Go ahead. Are there magic words required to be spoken or does the fact that they come into the jury room and they don't talk to one another, no one talks to them, they're played this evidence and then go back to the jury room, that's not suspending deliberations? As to magic word, Your Honor, we're not submitting to this court that magic words would be required. What is required is the issue that the jury brings before the court in its request. The jury here made an evidentiary request, a request to examine a piece of evidence. Examination of evidence is intrinsic to deliberation. In fact, it is the very purpose of deliberation. Did they ask to hear the 911 tape again? What they said after they heard the... Well, we know they heard it twice during the trial, right? Yes. And then so this was the third time when they... Yes. But my question is, did they ask to hear it? Because you're using the words examine. Yes, Your Honor. So which is it? It is, they asked, can we have the audio recorded? That, I cannot assure the court that that is a perfect quote, but I believe that that was the statement they made. It's, can we have the 911 call? Okay. As to that, so as I was stating, Your Honor, deliberation is not simply something that must be done in the confine of the jury room. It is what is being done. It is the examination of the evidence. That is deliberation. You're talking about examination of the evidence as if this were going to be something other than sitting quietly and listening to it again. Well, it could have been more than sitting quietly and listening. Tell me how that would work. Well, if we look at the sequence of events including leading up to the request and after the request, the jury announced before the request that it reached a verdict on the other charge, the home invasion charge. And then it requested the 911 call. Once it received it, it was in the presence of the parties, therefore there was no conversation made. But an hour and a half after that, it announced again that it was deadlocked on the relevant charge to which the 911 was pertaining. So had the jury been given that 911 call, maybe that final request, not request, but that final statement that we are hung up, which is an exact quote, we are hung up on domestic battery, maybe that would never have occurred. I'm not being clear. I'm drawing the distinction. You talk about examining the exhibit. That would be if, let's say, there was a document or some photographs that the jury wanted to see again. And in the process, while deliberating back in the jury room, they might want to examine it and discuss among each other as to what they were seeing. Look at that. See, you can see in this photograph whatever. Or maybe you can't see whatever. When you're talking about playing a tape, it strikes me as contrary to our experience that the jury, when listening to this tape, how long was it, by the way, do we know? It was five minutes, Your Honor, at least. During the course of this five-minute tape, they're going to do other than sit there and just listen to it. Well, the tape is relevant because of the in-court testimony of the alleged... Counsel, you know, maybe I'm not making myself clear. When they're listening to this tape as opposed to examining a photograph and pointing out things or discussing amongst themselves, it seems to me unlikely and counterintuitive that during that five minutes that they're listening to the tape, they're going to be talking about it. Counsel, I think you're suggesting that perhaps if they had the tape, they may play a portion of it and stop it and say, did you hear that? Or then listen to what she says next. That's what you're suggesting. Yes, Your Honor. That is the point that I'm... That is what I'm trying to present to the court, is that the examination could have been done multiple ways. It doesn't require them to sit silently and listen to this tape. They could have paused, discussed a portion, replay, review, rewind. Also, even if none of that occurred, examination of an audio statement can be... It does include listening to that statement and discussing it after the fact. But the listening, what occurred here is the chilling effect. The inability of the jury to conduct that actual examination in the manner that it would have preferred to do so. Now, certainly since the tape was not sent back with the CD, wasn't sent back with them, obviously they couldn't start and stop it. I will certainly give you that. But what occurred, what was said that would prevent them from once they returned to the jury room after hearing it, from discussing it? Were they instructed that you get this final listening and don't talk about it anymore? Nothing was affirmatively said to the jury that would have prohibited it from doing so. But the chilling effect is not limited simply by the courts. It would not simply occur simply because of the court's instruction. Explain the chilling effect. The chilling effect, Your Honor, by chilling effect, what I mean is the freedom of the jury to do that sort of analysis. Pause, replay, the ability to control the manner in which it examined. Well, so far, if you could just help clarify, because I'm confused as to which or both of these tasks you're taking. It sounds like you're expressing concern that the jurors weren't able to do as Justice Holder White had suggested to be able to go back and replay certain portions and comment on what was observed in the replayed portion so that they didn't have full examination or ability to fully examine at their leisure within the jury room the videotape versus the actual playing of the videotape in the courtroom with others outside of the jury present. I think your term was violating the sacrosanct nature of the deliberations. So which of those two critiques are you pursuing on appeal here or both? Well, both, Your Honor. The critique is geared towards the violation of the secrecy of the jury deliberation. Well, that's the second. Are you saying that your client wasn't afforded a full opportunity to have the jury review the videotape back in the jury room? What I'm saying, Your Honor, is that my client's Sixth Amendment rights was violated because the cardinal rule that comes with that right includes the protection of the jury's deliberation, the secrecy of the jury's deliberation. So really it's only the second part of this, violating the sacrosanct nature of jury deliberations. Yes. Okay. And that is error because it implicates the defendant's Sixth Amendment rights. I just want the court to be clear as to the nature of the error. The error is a constitutional error arising out of a defendant's Sixth Amendment rights. What occurs in this case is that the jury's secrecy, the deliberation, the secrecy of the jury's deliberation was violated when the trial court required them to return back to the courtroom. You said early on that the one, I'm paraphrasing, and I may not be paraphrasing accurately your position on this, that in this case the jury deliberations did not cease when they came into the courtroom. Yes, Your Honor. And I think my review of the record is limited here, but here I don't believe the court in so many words indicated when they came into the courtroom that their jury deliberations were to cease at that moment and then when they left the courtroom that they could continue or resume deliberations. However, let's just take the example. Oftentimes this is what happens in these circumstances where the jury is brought into the courtroom and then upon being instructed to go back to the jury room, they are instructed to resume their deliberations. In this circumstance, if the court had uttered those words, the trial court, you may resume your deliberations. Wouldn't that indicate that deliberations had ceased while they were in the courtroom? No, Your Honor. Why not? Because deliberation, and this is going back to what I said earlier, deliberation is only suspended when there is a legal issue at play here or when the jury has reached a verdict. So the court can't suspend deliberations? The court can't suspend deliberations in circumstances other than what you're mentioning? Your Honor, there is no case law that says, other than people v. Charles, which requires the court to address a request from the jury. Unless the request is legal, what I'm saying, Your Honor, is that no, the court may not suspend unless there is reasons, legally speaking, a legal issue at play, or the jury has announced that it cannot reach a verdict, or the jury announced that it reached a verdict. Counsel, I mean, it's typical that juries are excused in the evening to go home. Yes, and that would be a suspension because the jurors are separated from each other. At that moment, the jury would traditionally be instructed not to discuss the case among themselves or with anyone or to do any external research. That right there is a suspension, Your Honor, but that is because the jury is divided. The jurors are separated. If the jury is acting as a body and reviewing evidence, examining evidence, passively listening to an audio, there is still deliberation that is ongoing. So your position is that even if, in this instance, the court had brought the jury in, told them, you've requested to hear this 911 recording, we're going to play it for you, but at this time, your deliberations are suspended. We will play the recording for you. I don't want you to comment or talk to each other in the courtroom, and then once we're done, you'll return to the jury room and then you can continue your deliberations. Even if that had happened, it's your position that the deliberations would not have been suspended and that would be improper. Yes, Your Honor. But also, that would bring us in the realm of Justice Holdred's dissent in People v. McKinley because I believe a statement like that is quite confusing to the jury, asking them what is there to be done once they're in the courtroom. Simply listening, and in that case, the chilling effect is even greater because the jury is being told, you cannot deliberate. You cannot make a discussion. You cannot pause, play, replay, and assess. At that moment, you must go back and only after going back, recommence your analysis, which defeats the purpose of the request. I believe in this case, not that I believe, but this case definitely shows that the facts here, the jury needed the ability, the freedom to assess the 911 call, especially given that an hour and a half later, they announced that they were still hung up on the issue, on the charge to which the 911 call was still pertinent. Was there a post-trial motion filed alleging the error in replaying the 911 recording? No, Your Honor. So you're arguing this is plain error? We are arguing, yes, Your Honor. We are also arguing plain error. So in the event this court were to conclude that defense counsel acquiesced to the playing of the tape, replaying of the tape under the circumstances that occurred here, aren't you barred from arguing plain error under those circumstances? Under those circumstances, yes, Your Honor. Without conceding my response to the state's acquiescence argument, that would take us on to issue number three, which is the ineffectiveness in this case. Okay. Well, I drew a distinction between ineffectiveness of counsel and plain error. This court has held in the past that if counsel has acquiesced, then plain error on the basis of the issue can't be raised, but ineffectiveness could be raised. Yes. Yes, Your Honor. Okay. Go ahead. If counsel did, in fact, acquiesce, then we submit to this court that ineffectiveness occurred. Because in this case, counsel had two alternatives by which she could have supported her suggestion, which I want to backtrack a little bit and explain that here. Counsel made a valid suggestion, an alternative to the court, which would have resolved this issue in the best manner possible. Counsel suggested to have the relevant audio burned onto a different CD in order to prevent the jury from listening to inadmissible evidence. This is exactly why the jury was brought out, because of the fear of having inadmissible evidence within the view of the jury or within the hearing of the jury. However, the state at trial said, no, I do not want to tamper with evidence, which is an incorrect assessment, and the court foreclosed the alternative, saying we are not going to do that. Therefore, counsel went along with the only best alternative, which was to bring the jury inside. However, counsel could have suggested to the trial court that, in fact, this brings us into the realm of the Jury Secrecy Act. The Jury Secrecy Act has a general prohibition from anyone to hear or even attempt to hear or view the jury during deliberation. Also, counsel could have raised a constitutional issue. Counsel could have argued that, under United States v. Orlando and under the Sixth Amendment, that the defendant is entitled to have the jury deliberate in the privacy and in the secrecy of the Constitution. If the court has no further questions for me, I would reserve my time for rebuttal. All right. You may. Thank you, Mr. Sancherman. Thank you, Your Honor. Ms. McClain. May it please the Court? Counsel? First, the State is maintaining that the defendant was proven guilty of domestic battery in this case beyond a reasonable doubt. The evidence was not close. Kelly Bloor testified that the defendant punched her in the head and the face. Her testimony was corroborated by the testimony of the officer who responded and saw the bruises on her face immediately after her 911 call. The photographs of the injuries that are included in the record show the beginning of a black eye, just like she stated in her 911 call, and the recording of the 911 call, which was an evidence in which she stated that the defendant beat her up again and gave her a black eye. In addition, she's hysterical and upset on the 911 call, and the officer testified to that fact, which is corroborative. And also, there's a shoe print on the door that supported her testimony and a broken chair. In addition, the defendant's prior conviction for domestic battery against Kelly Bloor was admissible to show the defendant's propensity to commit the crime of domestic battery. So I don't think it can be. In this case, I believe that the evidence overwhelmingly showed the defendant was guilty of domestic battery. As for the 911 call being played for the jury in the courtroom, defense counsel affirmatively acquiesced to this procedure when she agreed with the prosecutor that bringing the jury to the courtroom was probably safest. But wasn't that prefaced with the fact that it became clear that the prosecutor didn't want to burn a new CD and the judge wasn't going to force the prosecutor to do that? I don't think that the prosecutor said he didn't want to. I think he said he didn't want to tamper with evidence, which I took to mean that perhaps he was technically challenged or didn't feel like there was a feasible amount of time for him to figure out how to do it. But he didn't say either of those things, right? No, he didn't. But she did agree. She affirmatively acquiesced when she said that the procedure suggested about bringing the jury into the courtroom was, quote, probably the safest. So we would argue that plain error would not apply in this case. And also, no error occurred because defendant, through his attorney, affirmatively acquiesced to the procedure used. The steps a court takes at the defendant's behest are not reversible because they're not error. So your alternative argument would be even if he didn't acquiesce, that this wasn't error, according to People v. Rouse? Yes. Okay. And so can you address that? Because we spent a lot of time talking with Mr. St. Germain about this issue. Whether or not the court's practice in this case violated the defendant's Sixth Amendment rights. Can you tell us what was violated in terms of the sacrosanct nature of the jury deliberations in this case by listening to the call, the audio tape in court? I believe that the Illinois courts have adopted an approach of Olano and that prejudice has to be evident before there is reversible error. So it's a matter of the court's discretion how they answer the jury's request to view or listen to a 911 call. And if there's no prejudice in the record, there's no error. Several cases have addressed this. The Rouse case was the first in Illinois. There was surveillance footage that was shown in the courtroom. The court found that it was an exercise of the trial court's discretion. The jury was told it could review the recording as often as it wished. The court cautioned the jury not to engage in deliberations while in the courtroom. No one communicated with the jury while they viewed the recording. And the court found no indicia of prejudice. So no error. In Johnson, a third district case, a divided panel determined that it would not presume prejudice from a third viewing of the video in the courtroom after deliberations had begun. The record displayed no intent to influence the jury's decision. The parties were admonished that they would not be allowed to verbally communicate with the jury during the courtroom viewing, and neither the prosecutor nor defense counsel attempted to do so. The jury continued deliberations without requesting to review the video again, indicating that it had thoroughly examined and considered the evidence to its satisfaction. The court found no prejudice. Kinley, another case out of the third district. The majority said, or the judge writing the opinion said, in the absence of actual prejudice, the court could find no abuse of discretion or error. So I think that all those cases, and most recently this court's Matthews case, it was a surveillance video of a drug, a controlled drug buy, which was played for the jury in the courtroom. I believe this court found no structural error. Are you familiar with the recent case out of the third district, People v. Henderson? No, I am not. It's 2017, ILLAP, third district, 150-550. But in that case, an opinion authored by Justice Smith, the trial court allowed the jury to view a, I believe it was videotape, in the courtroom, but only in the presence of a bailiff and an employee of the state's attorney's office. And in that case, it was found that the trial court committed clear error by allowing the jury to, yes, it was video, to review the video in the courtroom. But the court wrote, even if the jury did not discuss the case while in the presence of the bailiff or the employee of the state's attorney's office, we simply have no way of determining what effect their presence had on the jury. As the defendant notes, the employee of the state's attorney's office or the bailiff could have frowned at a piece of evidence or scoffed at defendant's testimony. However, neither the judge nor defendant nor defense counsel was present to oversee the interaction and to observe any impropriety. Now, contrary to that case, the circumstances here would have the judge, the defense attorney, the defendant, the state's attorney all present in the courtroom to guard against such possible effects. Is that right? Right. But don't we still have the same possible problems that are outlined in the case regarding whether or not the judge or defense counsel or someone did something to suggest their opinion regarding what the jury was listening to? I think the record says that nothing was said besides the judge's simple admonition that you were going to be, for legal reasons, that you were going to listen to the 911 call here in the courtroom. That was a very simple admonition.  Unfortunately, the jury had no questions and said nothing. The record shows no prejudice, no intent to influence them. There's nothing objective in the record that indicates that they were affected at all by the procedure in this case. What was the name of the case you were talking about? Okay, but my point is, in Henderson, if they said we don't know if someone frowned or did whatever, how do we know that in our case as well? I respectfully disagree with the Henderson case. I think that the record should show an objective indication of some influence on the jury rather than saying it might have happened. I do think that the fact that the judge was not there, I think that distinguishes it. You don't have to disagree with Henderson to make that distinction, do you? No. I mean, the judge was present in this case and wasn't in Henderson. Why isn't that sufficient? I believe that it should be sufficient. I'm curious what the standard of review is to be in circumstances such as this when the knee-jerk reaction from a fellow judge's standpoint would be, this should be viewed under an abuse of discretion standard, what a trial court does, what a trial court judge does in his or her courtroom in terms of interaction with the jury. But it seems from the defendant's standpoint that this is not an act of discretion, that a trial court cannot allow a jury to review evidence once deliberations have begun in court, that no discretion is allowed to a trial court. What is your view on the standard of review? I think that it is, I think in Illinois they've adopted that it's a matter of court discretion, but reversal is not warranted if no harm results. So I think it's a matter of the court's discretion how they decide how the 911 call is going to be played to the jury, and there would be no reversible error or prejudice in the record, then that's fine. But the court has to decide what it's going to say, and everybody has to be quiet. I think in this case it's obvious that nothing influenced the jury, so I think it's fine. As for the ineffective assistance of counsel argument, in this case it happened in April 2015. At that point the only Illinois case talking about this issue was the Rouse case, in which the court held that it allowed the jury to view a surveillance recording in the courtroom in the presence of both parties and the trial judge, so that was a matter of the trial court's discretion. So that's the state of the law at the time of this trial, and I don't believe that defense counsel has shown ineffective or deficient performance by defense counsel, and we'd ask the court to affirm defendant's conviction. Okay, thank you, Ms. McClain. Mr. St. Germain, rebuttal argument? Yes, Your Honor. Three points on rebuttal in no particular order. Going to the standard of review, courts have discretion as to whether they will comply with the request. If a request is made, the court's discretion is whether to deny it or to accept that request. Once the court determines which course of conduct to do if it complies with the request, now we are in the realm of Evans v. Lucy, a United States Supreme Court decision, which states that where state courts have discretion, they must exercise that discretion within the bounds of the U.S. Constitution. The U.S. Constitution provides that the cardinal rule is that jury deliberation must remain private and secret. If the court complies with the request to allow them to listen to this audio recording, it must do so under the fabric of jury secrecy. Second point is People v. Rouse. Rouse also brings us back to discretion, and Rouse looked at it from the standpoint of discretion, but failed to assess the constitutional issue here. The constitutional issue is that the cardinal rule of jury secrecy, the secrecy of jury deliberation, was violated and disimplicated Mr. Lewis' Sixth Amendment rights. As to Olano and prejudice and whether there is error, error, the determination of error, is separate from the determination of prejudice. The court must look to see if there is error and then find prejudice in order to reverse. We submit again, not to be repetitive, that error occurred here because there was a violation of Mr. Lewis' Sixth Amendment right. In McKinley, there was no true majority. There was three decisions, a lead opinion, and a concurring opinion. The concurrence here found that there was error because of the chilling effect. Because of the chilling effect, there would have been error according to the concurrence, but then because the error was not preserved, the concurrence determined that there was no plain error and therefore no reversal. Here, we submit that plain error does occur on the bull prong of plain error, closely balanced as defined in People v. Seve, and as structural error as defined in Weaver v. Massachusetts. Mr. St. Germain, in terms of the jury deliberation issue and viewing of the, or listening to the 911 call, on that issue alone here, I understand your argument about the sanctity of jury deliberations and so forth, but here, from a practical standpoint, in this case, what can you point to as possible prejudice to the defendant in terms of the jury listening to the tape in the courtroom? What can we take away from your argument here today in terms of what the possible prejudice could have been to your client? This brings me to my final, your question brings me to my final point, Your Honor, which is People v. Henderson. I am willing to provide the court with supplemental briefing on Henderson. However, I can address it quickly here. I believe that the presence of the parties and the trial judge has a greater effect, a greater chilling effect. The power language coming from the parties is more so prejudicial to the defendant than that would have come from a bailiff.  The power language, Your Honor. Power of language? Power, power, the power language. The nonverbal cues of the parties present. P-A-R-A, power language. Yes, forgive my accent. Oh, that's all right. Forgive my accent. Okay, okay. It is the… Well, how do we know any of that occurred? But that's the essence of power language, Your Honor, is that we don't know if it occurred. Well, but we have a judge who's sitting there. That's the difference between this case and that third district case. The judge in this instance, as in all instances, is in charge to make sure that everyone conducts himself or herself appropriately. And body language, grimaces, any of that other stuff, you know, you're looking at a bench of former trial judges here, and this is not that tricky to keep an eye on, make sure nothing untoward happens. So what, in the absence of the court having so commented, what reason do we have on this record to conclude anything may have happened? Well, respectfully, Your Honor, I've not been a trial judge, but I would suggest, I would state, that even given a trial judge keen eye, there is still a risk that a conduct by the prosecutor, a smirk from the defendant, a shaking of the head from the trial counsel, any of that could, I see that my time. Go ahead and finish. Any of those cues, any of those movements, any of those conducts. Well, here's my point, though, and going to Justice Harris' question. Assuming you're right that any of those things, if they had occurred, might have some effect or be a bad thing to have happened, in the absence of the trial judge commenting upon it or defense attorney or anyone else calling to the judge's attention, to address Justice Harris' question, why should we assume anything like that may have happened? Because of the constitutional right that is implicated, Your Honor. Well, that answer suggests that we have to assume it always will and did happen. Is that what you're arguing? Yes, Your Honor, but I think that is the very purpose of the secrecy of jury deliberation. And just to quickly conclude, Your Honor, I think that brings us into the broad category expressed in Weaver v. Masters. He said, is that we don't know what effect this would have had and it's hard to measure. Therefore, we would ask that this court reverse and thank you. Okay, thank you. Thank you both. The case will be taken under advisement and a written decision, shall I say.